IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1117

Filed: 5 May 2020

Buncombe County, Nos. 17 CRS 80163-64, 17 CRS 80166, 17 CRS 338

STATE OF NORTH CAROLINA

v.

CHARLES BLAGG, Defendant.

Appeal by defendant from judgments entered 29 January 2018 by Judge Gary M. Gavenus in Bumcombe County Superior Court. Heard in the Court of Appeals 9 April 2019.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph E. Herrin, for the State.*
>
> *Vitrano Law Offices, PLLC, by Sean P. Vitrano, for defendant-appellant.*

BERGER, Judge.

Charles Blagg ("Defendant") was convicted of possession with intent to sell and deliver methamphetamine, possession of methamphetamine, possession of marijuana, and attaining habitual felon status on January 11, 2018. Defendant was sentenced on January 29, 2018, and he received concurrent sentences of 128 to 166 months and 50 to 72 months in prison. Defendant appeals, arguing the trial court erred in denying his motion to dismiss the possession with intent to sell or deliver methamphetamine charge. We disagree.

Factual and Procedural Background

Defendant failed to appear when his cases were called for trial, and he was tried *in absentia*. The evidence at trial tended to show that Buncombe County Sheriff's Office Deputies Darrell Maxwell ("Deputy Maxwell") and Jake Lambert ("Deputy Lambert"), along with a third deputy, were conducting surveillance of a home on Flint Hill Road in Weaverville on January 4, 2017.

Deputy Maxwell had been with the Sheriff's Office since 1999. At all relevant times herein, Deputy Maxwell was a member of the Sheriff's Community Enforcement Team, which specifically addressed drug crimes and service of high-risk warrants. He testified that he was familiar with the appearance, packaging, and distribution of methamphetamine and marijuana.

Deputy Maxwell was positioned across the street from the residence. Deputy Maxwell observed a vehicle pull into the driveway of the residence, and a man went inside "for approximately 10 minutes." Deputy Maxwell did not see the man re-enter the vehicle, but he saw the lights on the vehicle illuminate and the vehicle pull out of the driveway.

Deputy Maxwell followed the vehicle for approximately one mile. Deputy Maxwell observed the vehicle cross the double yellow line as it approached a blind curve, and he initiated a traffic stop. Defendant was driving the vehicle, and Deputy Maxwell asked Defendant for his driver's license to conduct a records check. Then,

Deputy Maxwell conducted a pat-down search, which Defendant did not object to. Deputy Maxwell recovered a pocketknife from Defendant's person but noted there was nothing unusual or uncommon about the discovery. Defendant denied having any drugs or contraband.

Deputy Maxwell asked Defendant for consent to search the vehicle. Defendant responded: "[N]ot without a warrant[.]" Deputy Maxwell returned to his patrol unit "to write [Defendant] a warning ticket for crossing over the double yellow line." While Deputy Maxwell was writing the warning citation, Deputy Lambert arrived with K-9 Officer Jedi.

Deputy Lambert had worked as a law enforcement officer for 13 years at the time of this incident. He had worked with the K-9 Jedi for five years. Jedi was a trained narcotics dog, certified in detecting the odor of marijuana, methamphetamine, cocaine, and heroin. Deputy Lambert, Jedi's trained handler, instructed Jedi to conduct an open-air sniff around Defendant's vehicle. Jedi alerted three times in a manner consistent with detection of an odor of narcotics. Deputy Lambert conducted a partial search of the inside of the vehicle, and he located what appeared to him to be methamphetamine.[1]

---

[1] We use the terms methamphetamine and "crystalline substance" throughout the opinion. Methamphetamine refers to the substance found in a bag that was analyzed and determined to be 6.51 grams of methamphetamine. "Crystalline substance" refers to the separately packaged, untested quantities of what Deputy Lambert believed to be methamphetamine that was packaged similarly to the 6.51 grams of methamphetamine.

Defendant was arrested and a more thorough search of the vehicle was conducted. Deputies discovered an off-white crystalline substance in a large bag and several small bags individually wrapped; several unused syringes; one loaded syringe; a baggie of cotton balls; and a camouflage "safe" that contained plastic baggies and other drug paraphernalia. Deputies did not recover cash from Defendant or from inside the vehicle. No cutting agents, scales, or business ledgers were found. Deputies acknowledged that there was no evidence discovered on this occasion that would indicate that Defendant was a high-level actor in the drug trade. However, Defendant attempted to provide information on an individual wanted for drug trafficking, and he acknowledged that he was going to meet with this individual.

Lab analysis showed that the large bag contained 6.51 grams of methamphetamine. While the total weight of the methamphetamine and the crystalline substance recovered from the vehicle was 8.6 grams, the contents of the remaining baggies containing the crystalline substance were not tested pursuant to crime lab procedures.

Defendant was indicted for possession with intent to sell or deliver methamphetamine, possession of methamphetamine, possession of marijuana, possession of marijuana paraphernalia, and attaining habitual felon status. Defendant's case came on for trial on January 9, 2018. The possession of marijuana paraphernalia charge was dismissed at the close of the State's evidence. Defendant

4

also moved to dismiss the possession with intent to sell or deliver methamphetamine charge. He argued that the State did not prove Defendant had the intent to sell or deliver methamphetamine. Defendant specifically argued:

> [T]here was no cash, no guns, no evidence of a hand to hand transaction[,] . . . [n]o books, notes, ledgers, money orders, financial records, documents, . . . [and] nothing indicating that [Defendant] is a dealer as opposed to a possessor or user[.]

Defendant appeals the denial of his motion to dismiss.

Standard of Review

"We review the trial court's denial of a motion to dismiss *de novo*." *State v. Blakney*, 233 N.C. App. 516, 518, 756 S.E.2d 844, 846 (2014) (citation omitted).

> A motion to dismiss for insufficient evidence is properly denied if there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. All evidence, both competent and incompetent, and any reasonable inferences drawn therefrom, must be considered in the light most favorable to the State. Additionally, circumstantial evidence may be sufficient to withstand a motion to dismiss when a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is the jury's duty to determine if the defendant is actually guilty.

*Id.* 518, 756 S.E.2d at 846 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State,

5

giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). In addition, "we have held that in borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Coley*, ___ N.C. App. ___, ___, 810 S.E.2d 359, 365 (2018) (*purgandum*).

<u>Analysis</u>

"[I]t is unlawful for any person . . . [to] possess with intent to manufacture, sell or deliver, a controlled substance." N.C. Gen. Stat. § 90-95(a)(1) (2019). "The offense of possession with intent to sell or deliver has three elements: (1) possession; (2) of a controlled substance; with (3) the intent to sell or deliver that controlled substance." *Blakney*, 233 N.C. App. at 519, 756 S.E.2d at 846.

When direct evidence of a defendant's intent to sell or deliver contraband is lacking, intent "may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia." *State v. Nettles*, 170 N.C. App. 100, 106, 612 S.E.2d 172, 176 (2005) (citation omitted). Other relevant factors may be considered. *See e.g.*, *State v. Thompson*, 188 N.C. App. 102, 106, 654 S.E.2d 814, 817 (2008). Because this inquiry is "fact-specific," courts must consider the "totality of the circumstances in each case . . . unless the quantity of drugs found is so substantial

that this factor—by itself—supports an inference of possession with intent to sell or deliver." *Coley,* ___ N.C. App. at ___, 810 S.E.2d at 365.

When viewed in the light most favorable to the State, the evidence as a whole supported an inference that Defendant committed the offense of possession with intent to sell or deliver methamphetamine sufficient to overcome Defendant's motion to dismiss.

The quantity of a controlled substance alone will only "support the inference of an intent to transfer, sell, or deliver" if it is "substantial"—*i.e.*, more than would reasonably be carried for personal use. *Nettles,* 170 N.C. App. at 105, 612 S.E.2d at 176 (citations and quotation marks omitted). Here, the trial court determined that the State could not argue the 6.51 grams of methamphetamine in Defendant's possession was not for personal use. However, this does not negate the quantity seized by officers, or the inferences that the jury could reasonably draw therefrom. Defendant possessed at least 6.51 grams of methamphetamine, which is approximately 23% of the quantity necessary to sustain a conviction for trafficking in methamphetamine. This is not a small amount. *See State v. McNeil,* 165 N.C. App. 777, 783, 600 S.E.2d 31, 35 (2004) (finding that 5.5 grams of cocaine, which represents 19.64% of the trafficking amount, along with other relevant circumstances, was sufficient for a charge of possession with intent to sell or deliver cocaine); *State v. Brennan,* 247 N.C. App. 399, 786 S.E.2d 433 (2016) (unpublished) (concluding that

defendant's possession of 8.75 grams of methamphetamine, which represents 31.25% of the trafficking amount, along with various drug paraphernalia was sufficient evidence of the defendant's intent to sell or deliver methamphetamine).

In addition, the State presented evidence concerning the typical methamphetamine exchange between seller and consumer. Deputy Maxwell testified that, based on his training and experience, the typical transaction for methamphetamine was "anywhere from half a gram to one gram."

There was no evidence that the amount of methamphetamine in Defendant's possession was consistent with personal use. Defendant had more than six times, and up to 13 times, the amount of methamphetamine typically purchased. While it is possible that Defendant had 13 hits of methamphetamine solely for personal use, it is also possible that Defendant possessed that quantity of methamphetamine with the intent to sell or deliver the same. *See Brennan*, 247 N.C. App. 399, 786 S.E.2d 433 (2016) (unpublished) ("[I]f a half gram is considered an average user amount, the 8.75 grams of methamphetamine found in defendant's possession potentially represented 17.5 user amounts."). This issue is properly resolved by the jury.

Moreover, the evidence also tended to show that Defendant had just left a residence that had been under surveillance multiple times for drug-related complaints. Defendant also admitted that he had plans to visit an individual charged with trafficking drugs. While Defendant's actions may be wholly consistent with an

individual obtaining drugs for personal use, the jury could also reasonably infer that he had the intent to sell or deliver methamphetamine because of the quantity of drugs, the other circumstantial evidence, and his admission.

In addition, the evidence tended to show that Defendant possessed "paraphernalia or equipment used in drug sales." *Nettles*, 170 N.C. App. at 107, 612 S.E.2d at 177 (*purgandum*). Officers seized plastic baggies commonly used for packaging and delivery of controlled substances, cotton balls used to filter liquid methamphetamine, and syringes used to deliver methamphetamine into the body. *See* N.C. Gen. Stat. § 90-113.21(a)(9), (a)(11) (2019). The baggies in Defendant's possession are paraphernalia or equipment used in methamphetamine transactions. The following exchange occurred between the State and Deputy Maxwell concerning packaging:

> Q. Deputy Maxwell, based on your approximately five years of drug investigations while you were on the enforcement team, *these plastic bags, based on your training and experience, is this consistent with your experience as to the dealing and transportation of methamphetamine*?
>
> A. It is.
>
> Q. What are the ways that you typically see methamphetamine packaged?
>
> A. Usually a seller will individually package the substance. Usually in anywhere from half a gram to one gram, depending on what the buyer is wanting. On occasion, they will weigh out and re-package it, and sell

whatever the buyer is seeking.

Thus, the evidence presented to the jury tended to show the plastic bags in Defendant's possession were typically used in the transportation and distribution of methamphetamine. Standing alone, possession of the baggies may be innocent behavior. However, when viewed as a whole and in the light most favorable to the State, the jury could reasonably infer that baggies in Defendant's possession were used for the packaging and distribution of methamphetamine.

The question here is not whether evidence that does not exist entitles Defendant to a favorable ruling on his motion to dismiss. That there may be evidence in a typical drug transaction that is non-existent in another case is not dispositive on the issue of intent. Instead, the question is whether the totality of the circumstances, based on the competent and incompetent evidence presented, when viewed in the light most favorable to the State, permits a reasonable inference that Defendant possessed methamphetamine with the intent to sell or deliver.

In this type of case, where reasonable minds can differ, the weight of the evidence is more appropriately decided by a jury. *Coley*, ___ N.C. App. at ___, 810 S.E.2d at 365. Accordingly, the trial court did not err in denying the Defendant's motion to dismiss and submitting the case to the jury.

NO ERROR.

Chief Judge MCGEE dissents by separate opinion.

Judge TYSON concurs.

McGEE, Chief Judge, dissenting.

The State had the burden of proving possession of methamphetamine *with the intent to sell or deliver* it ("PWISD").  I believe the record evidence in this case shows nothing more than "the normal or general conduct of people" who *use* methamphetamine; thus, the evidence, at most, "raises only a suspicion . . . that [D]efendant had the necessary intent to sell and deliver" methamphetamine.  *State v. Turner*, 168 N.C. App. 152, 158–59, 607 S.E.2d 19, 24 (2005) (citation omitted).  I therefore respectfully dissent.

In order to survive a motion to dismiss, the evidence must be substantial— such that "a reasonable inference of defendant's guilt may be drawn from the circumstances[.]"  *State v. Barnes*, 334 N.C. 67, 75–76, 430 S.E.2d 914, 919 (1993).  "[V]iew[ing] the evidence in the light most favorable to the State, [and] making all reasonable inferences from the evidence in favor of the State[,]"  *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002) (citation omitted), the record evidence in this case, as I discuss in detail later in my dissent, was only sufficient to allow a reasonable inference of two relevant facts.  First, a single bag containing 6.51 grams of methamphetamine was found in the vehicle (the "vehicle") Defendant was driving, but the 6.51 grams of methamphetamine was "not sufficient to raise an inference that [possession of] the [drug] was for the purpose of [sale or delivery]."[2]  *State v. Wiggins*,

---

[2] We cannot consider "evidence" that was not admitted at trial and, as the trial court firmly warned the State, the State had not introduced any evidence that 6.51 grams was indicative of an intent to sell, or more than a simple drug user might reasonably possess for solely personal use.  The trial court expressly forbade the State from making any inferences to the contrary at trial.

33 N.C. App. 291, 294–95, 235 S.E.2d 265, 268 (1977) (citation omitted). Second, an *undetermined* number of clear plastic bags were found in the lockbox recovered from the rear right floorboard of the vehicle. Due to the lack of record evidence concerning the number of empty plastic bags recovered from the vehicle, or introduced at trial, this Court cannot presume the existence of more than the smallest reasonable number of empty bags—the testimony only indicated plural, or more than one bag. Although the record evidence only indicates that more than one empty bag was recovered—therefore a minimum of two—I will assume, *arguendo*, the record evidence supported a reasonable inference that deputies recovered "a couple" or "a few" empty plastic bags from the vehicle. *State v. Mitchell*, 336 N.C. 22, 28-29, 442 S.E.2d 24, 27-28 (1994), *abrogated on other grounds as noted in State v. Rogers*, 371 N.C. 397, 817 S.E.2d 150 (2018) (emphasis added) ("The trial court found that the quantity of marijuana was sufficient to permit the jury reasonably to infer that it weighed more than one and one-half ounces; *but there is nothing in the record before us to support that finding*. The marijuana was not brought forward on appeal, and we have not been able to see it for ourselves."); *see also Kemmerlin*, 356 N.C. at 473, 573 S.E.2d at 889 (citation omitted) ("'We have defined substantial evidence as that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion.'"). Based on the facts before us, any inference that more than a "few" empty plastic bags were found in the lockbox "would be based on mere speculation."

*State v. Robbins*, 319 N.C. 465, 487, 356 S.E.2d 279, 292 (1987).  I believe the trial court erred in denying Defendant's motion to dismiss when the record evidence demonstrated nothing more than possession of an amount of methamphetamine consistent with personal use, packaged in a single bag, and a few empty plastic bags recovered from the lockbox, which also contained personal items and paraphernalia only indicating drug use—including a "loaded" syringe.

## I. Analysis

### A. *Appellate Review*

The majority opinion argues that "[t]he question here is not whether evidence that does not exist entitles Defendant to a favorable ruling on his motion to dismiss. That there may be evidence in a typical drug transaction that is non-existent in another case is not dispositive on the issue of intent."  While the absence of evidence typically found in the possession of drug dealers is not necessarily "dispositive," decades of precedent establish that, in many cases, the lack of such evidence is dispositive, and I believe that is the case in the matter before us.  It is the State's burden to present substantial evidence supporting Defendant's intent to sell, and when the State fails to present sufficient evidence of an intent to sell, this Court must remand for entry of an order dismissing that charge:

> There was no testimony that the drugs were packaged, stored, or labeled in a manner consistent with the sale of drugs.  Defendant's actions were not similar to the actions of a drug dealer.  . . . .  A large amount of cash was not

found.  The police officers found four hundred and eleven dollars on defendant's person, which defendant stated was part of the money he received from his five hundred and forty-seven dollar social security check.  . . . .  Also, the officers did not discover any other money on the premises. The officers found four to five crack rocks in the parked car. Although the officers testified that a safety pin typically is utilized by crack users to clean a crack pipe, there were no other drugs or drug paraphernalia typically used in the sale of drugs found on the premises.  *See State v. Rich*, 87 N.C. App. 380, 361 S.E.2d 321 (1987) (indicating an intent to sell or deliver drugs was established where twenty grams of cocaine was found along with a chemical used for diluting cocaine and one hundred small plastic bags in close proximity to the cocaine).  Viewed in the light most favorable to the State, the evidence tends to indicate defendant was a drug user, not a drug seller.

*State v. Nettles*, 170 N.C. App. 100, 107, 612 S.E.2d 172, 176–77 (2005).  The *Nettles*

Court relied in part on *State v. Turner*, in which this Court reasoned:

The State points to no other evidence or circumstances [than an officer's opinion that the defendant was carrying more crack cocaine than a normal drug user would possess] that in any way suggest that defendant had an intent to sell or deliver the crack cocaine contained in the tube lying on the loveseat between defendant and Ishmar Smith.

The State, for example, presented no evidence of statements by defendant relating to his intent, of any sums of money found on defendant, of any drug transactions at that location or elsewhere, of any paraphernalia or equipment used in drug sales, of any drug packaging indicative of an intent to sell the cocaine, or of any other behavior or circumstances associated with drug transactions. The State's entire case rests only on a deputy's opinion testimony about what people "normally" and "generally" do.  The State has cited no authority and we have found none in which such testimony—without any

other circumstantial evidence of a defendant's intent—was found sufficient to submit the issue of intent to sell and deliver to the jury.

*State v. Turner*, 168 N.C. App. 152, 158, 607 S.E.2d 19, 24 (2005) (citation omitted).

Further:

> In *State v. Wiggins*, 33 N.C. App. 291, 235 S.E.2d 265 (1977), defendant was found with less than one-half pound of marijuana in his possession. No weighing scales, rolling papers or other paraphernalia were found. The Court held that this small quantity of marijuana alone, without additional evidence, was insufficient to raise the inference that defendant intended to sell the substance.

*State v. King*, 42 N.C. App. 210, 213, 256 S.E.2d 247, 249 (1979); *see also State v. Battle*, 167 N.C. App. 730, 733, 606 S.E.2d 418, 421 (2005) (citation omitted) ("A relatively small drug quantity alone, 'without some additional evidence, is not sufficient to raise an inference'" that the drug was possessed for any reason other than "only for personal use[.]"). As in *Battle*, in this case the State did not introduce evidence that the amount of the drug found in the vehicle was more than an amount "only for personal use[.]" *Id.* In *Battle*:

> [T]he State presented little evidence supporting Defendant's alleged intent to sell cocaine. Only 1.9 grams of compressed powder cocaine—little enough, according to the State's own chemist, to have been only for personal use—was found. The investigators found no implement with which to cut the cocaine, no scales to weigh cocaine doses, no containers for selling cocaine doses. The investigators further searched Defendant's car and found neither drugs nor paraphernalia. The State's meager evidence of intent to sell cannot be considered "substantial

evidence" supporting the charge of possession of cocaine with intent to sell.

*Id.* (citation omitted). Because the amount of methamphetamine in this case must be considered relatively minimal—as an amount regularly possessed by simple drug users, the State was required to introduce substantial additional evidence sufficient to allow a reasonable inference that Defendant intended to sell the drug—*i.e.*, items generally *associated with drug dealing*, testimony about Defendant's activities *suggesting drug selling*, and expert testimony *making the connection between the evidence presented and drug dealing*, when such a connection was outside the common knowledge of a typical juror.[3] The other "items" usually associated with drug dealing rather than drug use are those discussed in *Nettles* and its progeny, such as *large amounts of cash*, mostly in smaller denominations; *scales* to weigh and divide the drug into usual sales amounts; *tools* for "safely" dividing and packaging the drug with minimal loss of product; a *cutting agent* to mix in with the drug in order to dilute it and allow the dealer to sell more units; *numerous bags or other containers* to contain the weighed and divided drug, and promote efficient and discreet delivery; *numerous individual units* of the drug *already packaged in amounts typical for dealing*, and ready to sell. The State would also have to present *expert testimony explaining this*

---

[3] An obvious example of behavior suggestive of drug dealing would be if Defendant was observed in an area known for drug sales activity, remained in the same location for a long period of time, during which Defendant had multiple brief interactions with different people in which Defendant was observed exchanging small packages for cash

- 6 -

*evidence* and why it was indicative of drug sales and not just drug use. *Nettles*, 170 N.C. App. at 107, 612 S.E.2d at 176; *see also Turner*, 168 N.C. App. at 158, 607 S.E.2d at 24; *Battle*, 167 N.C. App. at 733, 606 S.E.2d at 421; *King*, 42 N.C. App. at 213, 256 S.E.2d at 249. I would hold the State failed to meet its burden in this case.

### B. *The Lack of Evidence*

In this case, the State's additional evidence consisted of a few empty plastic bags. The State presented no expert, or even lay, testimony linking these empty bags to an intent to sell, rather than use, the methamphetamine. "Viewed in the light most favorable to the State, the evidence tends to indicate defendant was a drug user, not a drug seller." *Nettles*, 170 N.C. App. at 107, 612 S.E.2d at 176–77. There was also no testimony that any of Defendant's *actions* after the stop, during the search, or during and after Defendant's arrest, were indicative of an intent to sell the methamphetamine recovered from the vehicle. The State contends in the fact section of its brief that Defendant "voluntarily told [the deputies] during the stop that 'he would give [them] Haywood's most wanted' in reference to 'a female who was wanted for trafficking heroin or something of that nature.'" While this is factually correct, Defendant's statements carry very little relevance, as is indicated by the State's decision not to reference them in the argument section of its brief. Deputy Maxwell testified: Defendant "advised me that he was supposed to meet her. He didn't elaborate on the reason to meet her[.] I can't remember the exact conversation at

that point." Deputy Maxwell testified concerning Defendant's claim that he could provide information about an alleged drug dealer that it "was not unusual. I mean it's pretty common once you arrest somebody for possession of some sort of drugs, they want to try to help themselves." Deputy Maxwell had never heard of the woman Defendant was calling "Haywood's most wanted." He did not remember the specifics of Defendant's "offer" to help, and nothing in the record suggests Deputy Maxwell or anyone else thought Defendant's statements warranted any follow-up. Deputy Lambert testified that Defendant "was reaching out trying to figure out how he could assist himself with his bond or his charges that he may incur." There was no testimony that Defendant's attempt to get help "with his bond" "or [the] charges he may incur" in this matter was at all suggestive that Defendant was a drug dealer instead of someone "arrest[ed] [] for possession of … drugs[.]"

Assuming, *arguendo*, that any empty plastic bags were properly introduced into evidence, based upon the record evidence, it was impermissible for either the trial court or the jury to infer that more than "a few" empty plastic bags were recovered, or that possession of *any* number of empty bags constituted evidence from which it could be inferred that Defendant was a drug dealer instead of a simple drug user. There is absolutely no record evidence from which we can infer that the jury, or the trial court, had any idea how many empty bags were found in the vehicle. We cannot assume the existence of facts not supported by the record, nor assume the

State met its burden on an issue if *the record* does not support such a determination. *Mitchell*, 336 N.C. at 28-29, 442 S.E.2d at 27-28.

When, as in this case, direct evidence of a defendant's intent to sell or deliver a controlled substance is lacking, intent "may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia." *Nettles*, 170 N.C. App. at 106, 612 S.E.2d at 176 (citation omitted). Other relevant factors may be considered as well, *see, e.g. State v. Thompson*, 188 N.C. App. 102, 106, 654 S.E.2d 814, 817 (2008), but "in ruling upon the sufficiency of evidence in cases involving the charge of possession with intent to sell or deliver, our courts have placed particular emphasis on *the amount* of drugs discovered, their *method of packaging*, and the presence of paraphernalia *typically used to package drugs for sale*." *State v. Coley*, 257 N.C. App. 780, 788, 810 S.E.2d 359, 365 (2018) (emphasis added); *see also Nettles*, 170 N.C. App. at 107, 612 S.E.2d at 176; *Turner*, 168 N.C. App. at 158, 607 S.E.2d at 24; *Battle*, 167 N.C. App. at 733, 606 S.E.2d at 421; *King*, 42 N.C. App. at 213, 256 S.E.2d at 249.

The only testimony concerning packaging of the drug was the following testimony by Deputy Maxwell given immediately after he had testified about the photographs entered into evidence showing the plastic bags with unknown substance(s) on the scale:

> Q. Deputy Maxwell, based on your approximately five years of drug investigations while you were on the enforcement team, these plastic bags, based on your training and experience, is this consistent with your experience as to the dealing … of methamphetamine?
>
> A. It is.
>
> Q. What are the ways that you typically see methamphetamine packaged?
>
> A. Usually a seller will individually package the substance. Usually in anywhere from half a gram to one gram, depending on what the buyer is wanting. On occasion, they will weigh out and re-package it, and sell whatever the buyer is seeking.

First, Deputy Maxwell's opinion testimony that the "plastic bags" he had just seen in photographs—the three plastic bags containing crystalline substance(s) being weighed—were "consistent with … the dealing … of methamphetamine[,]" was based on the improper assumption that all three bags contained methamphetamine. This constituted "only [on] a deputy's opinion testimony about what people 'normally' and 'generally' do"—the kind of testimony found insufficient, standing alone, "to submit the issue of intent to sell and deliver to the jury." *Turner*, 168 N.C. App. at 158, 607 S.E.2d at 24 (citation omitted). Second, the methamphetamine in this case was *packaged* in a single bag, in a quantity at least six times more than the one-half-ounce to one-ounce amounts Deputy Maxwell testified were standard amounts of methamphetamine when packaged for sale; the deputies recovered *no* one-half to one gram amounts of methamphetamine—packaged in a manner facilitating concealment

- 10 -

and quick sale—whether in small plastic bags or any other type of container. According to the *record* evidence, the methamphetamine in this case was not packaged in a manner normally associated with an intent to sell the drug. *Nettles*, 170 N.C. App. at 107, 612 S.E.2d at 176 ("There was no testimony that the drugs were packaged, stored, or labeled in a manner consistent with the sale of drugs.").

"Defendant's actions were not similar to the actions of a drug dealer." *Id.* at 107, 612 S.E.2d at 176. Deputy Maxwell testified that he did not observe Defendant doing anything out of the ordinary prior to stopping him—no hand-to-hand transactions with another person, for example. "I did not witness any transaction." In fact, Defendant was not observed interacting with anyone. The only reason Deputy Maxwell's suspicions were raised is because the residence was under surveillance, Defendant drove there and spent approximately ten minutes inside, then drove away.[4] Deputy Maxwell testified he had never seen Defendant or his vehicle visit this residence before, and no evidence was produced that anyone who lived in the residence, or anyone other than Defendant who had visited the residence, was *ever* involved in drug sales; but, most relevantly, prior to Defendant's arrest. As noted above, the *amount* of the drug in this case *must* be treated as an amount consistent with personal use, because, as the trial court clearly ruled, the State offered no

---

[4] There is no *record* evidence that the residence was under surveillance due to suspected illegal drug activity. The trial court sustained Defendant's objection to Deputy Maxwell's testimony that he was watching the residence due to "complaints" concerning "suspected drug activity[,]" and there was no other testimony in evidence to that effect.

evidence that would allow the jury to infer otherwise. *Id.* at 106, 612 S.E.2d at 176 ("it cannot be inferred that defendant had an intent to sell or distribute from such a[n] . . . amount alone").

*No cash* was found on Defendant or in the vehicle. *See Id.* at 107, 612 S.E.2d at 176-77 (Evidence was insufficient where: "A large amount of cash was not found. The police officers found four hundred and eleven dollars on defendant's person, which defendant stated was part of the money he received from his five hundred and forty-seven dollar social security check." "Also, the officers did not discover any other money on the premises."); *see also Wilkins*, 208 N.C. App. at 732, 703 S.E.2d at 810 (citation omitted) (the Court considered "the fact that defendant was carrying $1,264.00 in cash" in denominations of between $1.00 and $20.00 bills, but determined this evidence, considered with the State's other evidence, was not sufficient to support an intent to sell or deliver). Deputy Maxwell agreed, "based on [his] training and experience," that "drug dealers maintain on hand large amounts of U.S. currency" "so that they can maintain and finance their operation[.]" When asked to confirm that he "found zero money on" Defendant, Deputy Maxwell testified "I did not confiscate any currency from [Defendant]." Deputy Maxwell testified it was "common" for drug dealers to keep "ledgers" that "[u]sually [contain] names—and maybe not full names, but names, maybe money owed or—that's been my experience."

He also testified "that drug dealers often maintain books . . . about their drug dealing[.]" However, no such books or ledgers were found in the vehicle.

Deputy Maxwell testified that methamphetamine is often packaged in plastic bags for sale—therefore plastic bags can be considered *paraphernalia* depending on the facts introduced at trial. In this case, although the State appears to believe it introduced testimony that possession of empty plastic bags was an indication of an intent to sell, there is *no* testimony to that effect in the record. Nor was there any testimony that it was unusual to find a few empty plastic bags—or a large number of empty plastic bags—in the vehicle of a simple drug user. Further, there was absolutely no evidence at trial that any of the other paraphernalia found in the vehicle—an unknown number of commonly available syringes in the original small, unopened store packaging; one "loaded" syringe; cotton balls; and one rubber band— was indicative of an intent to sell methamphetamine. This is likely because these items suggest methamphetamine use, not an intent to sell the drug. Without appropriate testimony concerning these paraphernalia items, there was no evidence from which an intent to sell, rather than use, could be properly inferred from their presence in the vehicle. *Id.* at 107, 612 S.E.2d at 177 (citation omitted) (there was no "drug paraphernalia typically used in the sale of drugs found [on the defendant or] on the premises").

There was no evidence of other behaviors or items normally associated with drug sales. There was no *diluting or "cutting" agent* found, *id.*; Deputy Maxwell testified: "Drug dealers use [cutting agents] so when they get product, they can minimize it with rock salt and sell more"; and no *scales* to weigh and divide the drug into *usual* sales amounts were found, *King*, 42 N.C. App. at 213, 256 S.E.2d at 249. Deputy Maxwell testified that "in [his] training and experience, most drug dealers, they have scales so they know what they're selling;" and scales are "very important for a drug dealer so they don't get ripped off" but "[t]here were no scales in th[e] vehicle." There was no testimony that Defendant had *tools* for "safely" dividing and packaging the drug with minimal loss, *Battle*, 167 N.C. App. at 733, 606 S.E.2d at 421; that he had *numerous* bags or other containers to contain the weighed and divided drug and promote efficient and discreet delivery, *Nettles*, 170 N.C. App. at 106, 612 S.E.2d at 176; nor that he possessed *numerous individual units* of the drug already packaged in amounts typical for dealing, and ready to sell.

There was testimony that drug dealers often have *multiple cell phones* on which they conduct their business. A single cell phone was recovered from Defendant, taken into evidence, and forensically examined. No evidence supporting Defendant's involvement in the sale of drugs was recovered from Defendant's single cell phone. The State would also have to present *expert testimony explaining this evidence* and why it was indicative of drug sales and not just drug use. *Mitchell*, 336 N.C. at 29,

442 S.E.2d at 28 ("The jury may not find the existence of a fact based solely on its in-court observations where the jury does not possess the requisite knowledge or expertise necessary to infer the fact from the evidence as reflected in the record."); *Nettles*, 170 N.C. App. at 108, 612 S.E.2d at 177 ("the police officer did not testify that defendant possessed an amount that was more than a drug user normally would possess for personal use"); *Turner*, 168 N.C. App. at 158, 607 S.E.2d at 24 ("The State's entire case rests only on a deputy's opinion testimony about what people "normally" and "generally" do. The State has cited no authority and we have found none in which such testimony—without any other circumstantial evidence of a defendant's intent—was found sufficient to submit the issue of intent to sell and deliver to the jury.").

### C. *The State's Arguments*

### 1. Arguments on Appeal

"'When the evidence is . . . sufficient only to raise a suspicion or conjecture as to . . . the commission of the offense . . ., the motion to dismiss must be allowed.'" *Id.* I assume, *arguendo*, the State is correct that Defendant possessed a few empty plastic bags "which can be used in order to divide drugs into smaller quantities for sale." However, the State is incorrect in its assertion that the record evidence shows that the empty bags were "numerous." The State introduced the plastic bags into evidence only generally—as part of the contents of the lockbox. There was no testimony

concerning the number of empty bags, the size of the empty bags, a description of the empty bags, any potential relevance of the empty bags or, more specifically, how the presence of empty bags constituted evidence of methamphetamine dealing rather than use.

The remainder of the State's arguments are also either based on evidence not introduced at trial, or are not supported by any law, and should be summarily dismissed. No evidence supports the State's characterization of "[t]he amount of the drugs" recovered as "substantial[.]" There was no testimony that 6.51 grams of methamphetamine was a "substantial" amount, and the jury was not permitted to make that determination without expert testimony to that effect. There was no testimony comparing the 6.51 ounces of methamphetamine recovered to the amount required for a trafficking charge, 28 grams, nor any testimony explaining the relevance of any such comparison. The trial court properly prohibited the State from characterizing 6.51 grams of the drug as more than was consistent with personal use.

> When determining whether an element exists, the jury may rely on its common sense and the knowledge it has acquired through everyday experiences. Thus, the jury may, based on its observations of the defendant, assess whether the defendant is older than twelve. The jury's ability to determine the existence of a fact in issue based on its in-court observations, however, is not without limitation. The jury may not find the existence of a fact based solely on its in-court observations where the jury does not possess the requisite knowledge or expertise necessary to infer the fact from the evidence as reflected in the record.

*Mitchell*, 336 N.C. at 29, 442 S.E.2d at 28. The average juror does not have any personal familiarity with methamphetamine, its packaging, the usual tools used to portion and package methamphetamine, or what amount of the drug would constitute a "substantial" amount. *Id.* at 30, 442 S.E.2d at 28 ("Unlike age, the weight of a given quantity of marijuana is not a matter of general knowledge and experience. …. Human characteristics associated with various ages are matters of common knowledge. The same cannot be said regarding the weight of various quantities of marijuana. This is a matter familiar only to those who regularly use or deal in the substance, who are engaged in enforcing the laws against it, or who have developed an acute ability to assess the weight of objects down to the ounce. The average juror does not fall into any of these categories.").

The State also makes an incorrect statement of fact and law where it asserts: "Defendant was in possession of a controlled substance, that was visually identified by law enforcement as methamphetamine. This was confirmed as methamphetamine by the testimony of [] Cha[]ncey[,] who performed scientific testing on the substances presented and confirmed that the substances were methamphetamine, as testified to by Detective Maxwell." As the trial court properly understood, a law enforcement officer's visual inspection of a crystalline substance *is not sufficient* to identify that substance as methamphetamine. "The North Carolina Supreme Court held in *Ward* that '[u]nless the State establishes before the trial court that another method of

- 17 -

identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required.'" *State v. Carter*, 255 N.C. App. 104, 106–07, 803 S.E.2d 464, 466 (2017) (citations omitted). For this reason, whenever the State's case included either deputy's opinion that the crystalline substance(s) were methamphetamine, the trial court instructed the jury to discount that testimony, and not consider it in any manner during their deliberations.

Further, Chancey did not perform "scientific testing on the substances" and "confirm[] that the substances were methamphetamine, as testified to by Deputy Maxwell." Only one bag, and thus only one "substance," was tested. Chancey did not *confirm* the deputies' opinions, which were not evidence, she conducted testing on a single bag containing a crystalline substance and determined, scientifically, that the single bag contained 6.51 grams of methamphetamine—with a trace amount of an unidentified substance. The additional crystalline substance(s) contained in the plastic bags recovered from the vehicle were never tested, and the trial court clearly instructed the State and the jury that no inferences concerning the contents of the additional substance-containing bags could be made: "Three of those bags there is no evidence that they are methamphetamine. You understand that?" Further, the State incorrectly argues that Chancey "did not test the other items presented as the weight of [the bag containing 6.51 grams of methamphetamine] in and of itself met the

statutory weight requirements for the charges presented." This statement is erroneous because there is no "statutory weight requirement" for the charge of PWISD. Therefore, there could not have been a decision by the trial court or the jury that 6.51 grams met any "statutory requirement."

The State further argues, "[m]ore importantly the other items found within [] Defendant's vehicle infer the intent to sell[.]" The State only mentions two "other items": "[N]umerous syringes which can be used to deliver drugs in the system of a purchaser. More importantly, there were numerous baggies, which can be used in order to divide drugs into smaller quantities for sale." As noted, the syringes could not serve as evidence of Defendant's intent to sell because there was no testimony or other evidence introduced at trial allowing such an inference. There is no evidence concerning the number of syringes found in the vehicle, so there is nothing from which one could determine the presence of "numerous" syringes. The State's argument on appeal does not demonstrate more than that Defendant was in possession of an amount of methamphetamine small enough "to have been only for personal use[,]" *Battle*, 167 N.C. App. at 733, 606 S.E.2d at 421, and a few empty plastic bags, the significance of which was not established at trial. *Mitchell*, 336 N.C. at 29, 442 S.E.2d at 28.

### 2. Arguments at Trial

The State's arguments at trial, made *after* the close of all the evidence, also mainly focused on the empty bags. As noted above, the only testimony concerning packaging of the drug was the opinion testimony of Deputy Maxwell, which only undercut the State's case by introducing evidence that the usual packaging of methamphetamine for sale was in separate one-half-ounce to one-ounce amounts—not a single bag containing 6.51 ounces. Further, no empty plastic bags had been introduced into evidence at this time, so Deputy Maxwell's testimony was limited to the several plastic bags containing crystalline substance(s) that were depicted in the photographs he had just been shown.

Deputy Maxwell's answer was sufficient to permit an inference that methamphetamine packaged for sale is "usually" "individually package[d]" "in anywhere from half a gram to one gram, depending on what the buyer is wanting." In this case, the deputies recovered a single bag containing 6.51 grams of methamphetamine—*i.e.*, an amount and method of packaging methamphetamine that was not, according to the testimony, "usual," if the intent was to sell. Deputy Maxwell also testified there was a second, not "usual" packaging method, stating: "On occasion, they will weigh out and re-package it, and sell whatever the buyer is seeking." Taken together, this testimony is some evidence that occasionally methamphetamine dealers carry larger quantities of the drug in a single container and re-package it for sale only after the buyer specifies an amount, but the "usual"

method is to prepackage one-half gram to one gram amounts and carry those for sale. Therefore, the single bag containing 6.51 grams of methamphetamine was not packaged the way a dealer would "usually" package the drug for sale, and the lack of common tools for dividing, weighing, and repackaging for sale suggests use, not dealing. The bags containing untested substance(s) could not be considered by the trial court or the jury as evidence of the *Nettles* factor of "packaging."[5]

There was no testimony that the "few" empty plastic bags found in the lockbox with the "loaded" syringe, used "blunts," Chapstick, a personal letter, a single rubber band, and cotton balls, were at all suggestive of an intent to sell any of the methamphetamine—which was recovered from the console. There was no testimony that it was uncommon for a drug user to have a "few" empty bags in his vehicle for personal use, whether related to methamphetamine or anything else.

The syringes *cannot* constitute evidence in this case supporting an intent to sell because there was no testimony, expert or otherwise, that could have possibly linked the syringes to any intent to sell. Neither the trial court nor the jury could infer such a connection without expert testimony because whether or not drug dealers also typically possess "loaded" or new syringes is not a fact of common knowledge.

---

[5] The State asserts in its brief that "Chauncey [sic] … performed scientific testing on the substances … and confirmed that the substances were methamphetamine, as testified to by Detective [sic] Maxwell." This is simply incorrect. A single substance was tested from a single bag. As the trial court told the State: "Three of those bags there is no evidence that they are methamphetamine. You understand that?"

*Mitchell*, 336 N.C. at 29, 442 S.E.2d at 28 ("The jury may not find the existence of a fact based solely on its in-court observations where the jury does not possess the requisite knowledge or expertise necessary to infer the fact from the evidence as reflected in the record."). To a lay person, an unknown but small number of syringes would be at least as likely, if not more likely, to indicate drug *use* than an intent to sell. "Viewed in the light most favorable to the State, the evidence tends to indicate defendant was a drug user, not a drug seller." *Nettles*, 170 N.C. App. at 107, 612 S.E.2d at 176–77. As noted above, the forensic examination of Defendant's single cell phone turned up no evidence that Defendant was involved in the sale of methamphetamine or any other drug. Other than the "few" plastic bags, there was *no* paraphernalia found that was even arguably indicative of an intent to sell the methamphetamine.

In response to this lack of evidence, Defendant argued the PWISD charge should be dismissed because "there was no cash, no guns, no evidence of a hand to hand transaction. No evidence of people. No books, notes, ledgers, money orders, financial records, documents, guns. Nothing indicating that [Defendant] is a dealer as opposed to a possessor or user[.]" "They have to do something other than just say, hey, you had this. There has to be some testimony about something else, and we don't have any of that. No evidence of confederates, no evidence of conspiracy, no evidence of—again, a sale, hand to hand transaction. Nothing else in the car. Nothing."

Contrary to the State's argument to the trial court, there was no record evidence of the number of empty bags because the State did not have Detective Maxwell count any empty plastic bags during his testimony; instead, the State counted the bags itself while the jury was in the jury room awaiting closing arguments. If the trial court considered any of this non-evidence, it would constitute error.

The majority opinion generally appears to consider the empty plastic bags as the most important factor in support of the trial court's denial of Defendant's motion to dismiss, but it also discusses additional issues or alleged facts that it seems to find relevant. The majority notes that Deputy Maxwell "estimated that this was the fifth time he had participated in a stake out of [the] residence[,]" and surmises "the evidence … tend[s] to show that Defendant had just left a residence that had been under surveillance multiple times for drug-related complaints." As noted, the trial court sustained Defendant's objection to Deputy Maxwell's testimony that he was watching the residence due to "complaints" concerning "suspected drug activity"; there was no evidence presented at trial that the "residence" was "under surveillance multiple times for drug-related complaints." Deputy Maxwell also testified that he had never seen Defendant or the car Defendant was driving at the residence prior to the evening of 4 January 2017.

The majority opinion also states that "Deputy Lambert conducted a partial search of the inside of the vehicle, and he located what appeared to him to be methamphetamine." It further states that the untested "[c]rystalline substance" recovered from the vehicle and packaged separately from the tested bag containing 6.51 grams of methamphetamine was "what Deputy Lambert believed to be methamphetamine." Deputy Lambert did not testify at trial that the crystalline substance "appeared to be methamphetamine" but testified that he located "the black container that had the white crystal substance in it." While on the scene, Deputy Lambert did tell Deputy Maxwell that he had found what he believed to be methamphetamine in the vehicle, and this statement was captured by both deputies' body cams. When this comment came up on the body cam footage, the trial court requested the video be paused and instructed the jury: "Now Ladies and Gentlemen, you will disregard that statement that it appears to be methamphetamine. You will not consider that for any purpose in this trial. Each of you understand that?" There was no evidence admitted at trial that either deputy believed any of the crystalline substance(s) were methamphetamine, and the fact that Deputy Lambert made such a statement to Deputy Maxwell during the course of the search of the vehicle is irrelevant to our review. The *only* evidence establishing the presence of methamphetamine in the vehicle was the testimony of Chancey, who testified that a

single plastic bag recovered from the vehicle contained 6.51 grams of methamphetamine.

There is no record evidence of the "total weight" of the methamphetamine combined with the other crystalline substance(s) recovered from the vehicle. Although Chancey testified that she determined the "gross" weight of the non-tested substance(s), she did not provide those numbers at trial. The trial court cautioned the State that it could not use the untested bags as evidence of "the quantity of the substance [*i.e.* the methamphetamine]."

Any inference that the untested crystalline substance(s) were also methamphetamine, or any guess as to the weight of those substance(s), would not be based upon any evidence admitted at trial and, therefore, would be improper. On direct examination Deputy Maxwell testified concerning one of the State's exhibits: "That is a large bag of white crystal substance, what I believed to be methamphetamine." Defendant objected, and the trial court responded: "Sustained as to what he believes it to be. Ladies and Gentlemen, you'll disregard that. You will not consider it for any purpose in this trial." The trial court cautioned the State at trial: "What you're asking [the jury] to do is find [the untested substances in the other plastic bags are also] methamphetamine. The State cannot do it under the evidence in this case. Now if you want me to give an instruction to this jury that this Court instructs this jury that based upon the evidence they *cannot* find the items in [the

additional bags] are methamphetamine, then I'll do that[.] But *they can't make that finding. There's no evidence.*" (Emphasis added). The trial court later stated: "I'm going to instruct the State that they are not to tell this jury that the jury can look at those four packages and make a determination by the jury that the other three that were not tested are—is methamphetamine."[6] The untested substance(s) are not relevant.

No evidence was introduced that 6.51 grams of methamphetamine "is not a small amount[,]" and without testimony to that effect, it would have been an improper inference for the trial court or the jury to draw in this case. We are limited to the evidence of record, which is that Defendant possessed *exactly* 6.51 grams of methamphetamine. As the trial court noted, the State only presented evidence of 6.51 grams of methamphetamine recovered from the vehicle. We cannot infer the possibility that there was more than 6.51 grams of methamphetamine recovered when there is no record evidence that would allow such an assumption. The trial court cautioned the State it could not argue 6.51 grams of methamphetamine *was an amount greater than one would normally carry for personal use.* "Neither will you[, the State,] be able to argue to this jury that [the 6.51 grams] was more than [an amount normally carried for] personal use, *because there's no evidence of that.*"

---

[6] It is not clear what the "fourth" package is in reference to. Only three bags containing crystalline substance(s) were introduced by Deputy Maxwell through the photographs contained in the record. However, a fourth bag of untested substance would add nothing to the State's case.

(Emphasis added). *See Nettles*, 170 N.C. App. at 108, 612 S.E.2d at 177 ("[T]he police officer did not testify that defendant possessed an amount that was more than a drug user normally would possess for personal use."). In other words, the State could not argue the weight of the methamphetamine as a factor indicating Defendant had the intent to sell or deliver the drugs instead of the intent to consume all 6.51 grams himself. This meant the 6.51 grams of methamphetamine was sufficient to support the possession charge, but the State would have to rely almost entirely on *additional* evidence to meet its burden of proving the element of Defendant's intent to sell or deliver for the PWISD charge.

"Unless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required." *Ward*, 364 N.C. at 147, 694 S.E.2d at 747. "[T]he expert witness testimony required to establish that the substances introduced here are in fact controlled substances must be based on a scientifically valid chemical analysis and not mere visual inspection." *Id.* at 142, 694 S.E.2d at 744.

There was no testimony concerning the amount of methamphetamine drug users typically "purchase." There was no evidence from which it could be inferred that a drug user was unlikely to possess 6.51 grams of methamphetamine for personal use. There was no testimony concerning the amounts of methamphetamine generally

purchased for personal use, so any attempt to make that determination is speculation. I do agree with the general concept that "[w]hile it is possible that [someone could possess 6.51 grams of] methamphetamine solely for personal use, it is also possible that [person] possessed that quantity of methamphetamine with the intent to sell or deliver the same." Both of these things are possible and deciding which one is correct requires speculation. *Robbins*, 319 N.C. at 487, 356 S.E.2d at 292. It is possible that a defendant in possession of any amount of methamphetamine, no matter how small, intends to sell it—that is why the law in this case required the State to prove sufficient evidence beyond mere possession to prove PWISD. Further, because there was no expert testimony attempting to estimate the number of "hits" 6.51 grams might constitute, or how many "hits" would be considered excessive for personal use, any determination of the number of "hits" by the trial court or jury would have been improper. Nor should this Court make this kind of fact-finding determinations on appeal when there was no expert testimony to support this determination at trial. Unlike in *Nettles*, there was no testimony as to the amount of methamphetamine normally consumed in a single dose, nor the monetary value of 6.51 grams of methamphetamine. Deputy Maxwell simply testified that generally "a seller will individually package the substance. Usually in anywhere from half a gram to one gram, depending on what the buyer is wanting."

*State v. Brennan*, cited by the majority opinion, is unpublished and I do not believe this Court should adopt its reasoning that *evidence not presented at trial* may be considered by this Court and used to affirm the trial court's denial of a motion to dismiss. *See State v. Brennan*, 247 N.C. App. 399, 786 S.E.2d 433, 2016 WL 1745101, *4 (2016) ("Detective Phillips testified that in Haywood County, methamphetamine is usually priced and sold in half grams at $50 and whole grams at $100. Thus, if a half gram is considered an average user amount, the 8.75 grams of methamphetamine found in defendant's possession potentially represented 17.5 user amounts."). In addition, there was substantially more incriminating evidence introduced at trial in *Brennan* than in this case. *Id.* at *3

The majority opinion contends that Defendant possessed "paraphernalia" indicative of an intent to sell the methamphetamine in addition to the empty plastic bags, namely cotton balls and syringes. The majority opinion does not indicate how the cotton balls or syringes are indicative of an intent to sell and not simply the necessary tools of a user whose method of ingesting methamphetamine is injection, and there was no record evidence to support any alternate inference. At trial, the State argued *State v. Carter*, 254 N.C. App. 611, 802 S.E.2d 917, 2017 WL 3027550 (2017) (unpublished). *Carter* hurts the State's case, as in *Carter* this Court held that "paraphernalia" is relevant to prove PWISD methamphetamine when it is "consistent with an intent to sell methamphetamine such as weighing scales, chemicals, or empty

plastic baggies." *Id.* at *3 (citation omitted). This Court determined: "[T]he syringe found on [the d]efendant, like the safety pin in *Nettles*, indicates [the d]efendant possessed the methamphetamine for personal use" and not with an intent to sell. *Id.* (citation omitted). In this case, the cotton balls are certainly no more indicative of an intent to sell than the syringes. There was no expert or other testimony that cotton balls and syringes are commonly associated with drug dealers, so we cannot consider them as such in our *de novo* review. However, Deputy Maxwell testified that these items *are* used to prepare and inject methamphetamine by drug users, therefore, this Court, the trial court, and the jury could rely on their common sense to conclude these items are necessary for drug users to inject methamphetamine, and would naturally be found in the possession of drug *users*.

Further, Chancey testified that she only obtained the "gross" weights of the bags that were not tested,[7] but that she *would have* obtained exact weights, and tested each of the bags, if there had been enough of the crystalline substance(s) for the State to bring a trafficking charge against Defendant; explaining that because the total weight of the crystalline substance(s) wasn't close to the amount required for trafficking, "*the charge would be the same regardless of how many items I tested*[.]" (Emphasis added). The majority opinion mentions that the State did not test the

---

[7] "I weighed with the packaging, so I gave a gross weight, but I did not get a net weight of the substance itself." Further, not even the gross weight of the additional bags is included in Chancey's report.

additional crystalline substance(s) because it was the State "crime lab procedure[]" not to do so in cases like this one. This "procedure" is not justified because, although the amount of crystalline substance recovered from Defendant's vehicle was substantially less than the 28 grams required for a trafficking charge, Defendant was not only charged with the Class I felony of possession, he was *also charged with the Class H felony of PWISD*, and one of the factors considered for proof of the *essential element* of intent to sell is *the amount of the controlled substance* involved. If the State wanted to use the total amount of the crystalline substance recovered against Defendant it could, and should, have tested it.[8]

PWISD might not carry sentences as severe as trafficking, but a conviction for PWISD carries a substantially greater punishment than a conviction for possession— even felony possession. In this case, based upon Defendant's prior record level and his habitual felon status, Defendant was sentenced to fifty to seventy-two months for his possession of methamphetamine conviction. For the PWISD conviction, Defendant was sentenced to 128 to 166 months imprisonment. The difference between the maximum ranges of Defendant's possession and PWISD convictions is ninety-four months, or 7.82 years. Defendant's conviction is based on speculation as to whether someone possessing an amount of methamphetamine consistent with

---

[8] Because Defendant did not move to suppress the untested crystalline substance(s), or object to its introduction at trial, it was in evidence. However, even if the bags in which the untested substance(s) were contained had some minimal relevance, the untested substance(s) itself had none.

personal use, who was also in possession of a few empty plastic bags, had the intent to sell any of that methamphetamine. There was no way to make that determination without simply guessing or relying on impermissible inferences from the trial and from the State's arguments, which are not evidence. It simply was not possible for the State to meet its burden of proof based upon the record evidence, and I would hold "that [D]efendant's conviction be reversed for [PWISD] and remanded for resentencing, on the lesser included … offense of possession[.]" *Nettles*, 170 N.C. App. at 108, 612 S.E.2d at 177 (citation omitted). Otherwise, Defendant could be imprisoned an additional 7.82 years because a few empty plastic bags were found in the vehicle along with an amount of methamphetamine consistent with personal use.